# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| MARCO THOMAS ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:18cv00030 |
| ) | |
| JASON NORTON ) | |
| ) | |
|     Defendant. ) | |

## COMPLAINT

COMES NOW the Plaintiff, Marco Thomas, by counsel, and hereby respectfully moves this Court for judgment and award against Defendant Marco Thomas. In support of this Complaint, Plaintiff states as follows:

## INTRODUCTION

1. This matter arises out of an intentionally and maliciously written affidavit in support of a search warrant submitted by former detective Jason Norton. Defendant Norton, in his capacity as a detective for the Richmond Police Department, signed an affidavit he knew contained blatantly false information and proceeded to use a search warrant, procured solely based on his affidavit, to enter and search Mr. Thomas's home.

2. The blatantly unconstitutional actions of Defendant Norton violated Mr. Thomas's Fourth Amendment and Fourteenth Amendment rights and led to a criminal prosecution against Mr. Thomas that ultimately caused Mr. Thomas to spend over a year in jail.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331.

4. Personal jurisdiction is proper over the Defendant because he resided and worked within the Richmond Division of the Eastern District of Virginia at all times relevant to this Complaint.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) and assignment to this division pursuant to Local Rule 3(B)(4) because all events related to this matter took place in Richmond City, which is located within the Richmond Division of the Eastern District of Virginia.

**PARTIES**

6. Plaintiff Marco Thomas (hereinafter referred to as "Mr. Thomas") is an individual and, for all times relevant to this action, a resident and domiciliary of the Commonwealth of Virginia.

7. Defendant Jason Norton (hereinafter referred to as "Defendant Norton") is an individual and, for all times relevant to this action, was employed by the Richmond Police Department and was a resident and domiciliary of the Commonwealth of Virginia. Defendant Norton is being sued in his individual capacity.

8. At all times relevant to this Complaint, Defendant Norton was a state actor and acted under color of state law.

**FACTS**

9. On November 19, 2009, Marco Thomas was relaxing in the bedroom of his home (located on Griffin Avenue in Richmond, Virginia) when he heard unknown people in his house.

10. Mr. Thomas went downstairs and found Defendant Norton, along with other uniformed and plainclothes law enforcement officers, standing inside his home.

11. The officers had entered through the front door, which was closed but not locked. Mr. Thomas did not authorize Defendant Norton or the other officers to enter the home.

12. Defendant Norton asked Mr. Thomas to sit down at his kitchen table. Once seated, Defendant Norton showed Mr. Thomas a search warrant for his address issued by a magistrate judge and told Mr. Thomas that police were going to search his home.

13. The warrant detailed that a confidential informant told Defendant Norton that the informant had gone inside Mr. Thomas's home and viewed Mr. Thomas and his friends handling large quantities of marijuana and cocaine. As described below, this statement was false and was the material statement used in obtaining the search warrant.

14. Mr. Thomas was immediately suspicious of the warrant due to the fact that he knew that none of the activity described in the warrant had occurred in his presence.

15. Further, Mr. Thomas lived with his grandmother, whom he knew would not have allowed large groups of people in the house. Due to the falsehoods in the warrant, Mr. Thomas suggested to Defendant Norton that he obtained a warrant for the wrong address.

16. Although Mr. Thomas voiced his suspicions about the warrant, Defendant Norton told Mr. Thomas that the warrant was accurate and that the house would be searched. Defendant Norton knew that Mr. Thomas was correct and that the statements made regarding drug activity in the warrant were not made in regards to Mr. Thomas or Mr. Thomas's address.

17. Defendant Norton told Mr. Thomas that he had to remain seated with him while officers searched the house. Mr. Thomas did not consent to the search in any way.

18. One of the searching officers found a firearm and marijuana in Mr. Thomas's bedroom.

19. Defendant Norton then placed Mr. Thomas under arrest and led Mr. Thomas out to his police car and drove him to the police station for booking.

20. When police were booking Mr. Thomas, Defendant Norton told Mr. Thomas that he would exclude the charge for the unlawful firearm so that Mr. Thomas would be able to be released on bail. Defendant Norton told Mr. Thomas that he was allowing him the opportunity to make bail so that Mr. Thomas could "join the team."

21. Mr. Thomas was released on bail. While on bail, Mr. Thomas hired a defense attorney.

22. Mr. Thomas told his attorney that he suspected that the warrant was falsified and the attorney filed a motion to suppress the marijuana.

23. Defendant Norton falsely testified under oath in favor of the validity of the search warrant and the motion to suppress was denied.

24. At some point, the charge against Mr. Thomas regarding possession of marijuana was dismissed without prejudice and Mr. Thomas was released from custody.

25. At some point after Mr. Thomas's release, the charge for possession of marijuana was reinstated and additional charge regarding unlawful possession of a firearm was added.

26. Around August of 2010, when Mr. Thomas was pulled over for a minor traffic violation, the officer informed Mr. Thomas that a warrant had been issued for his arrest and placed Mr. Thomas under arrest.

27. Based on the fact that Mr. Thomas's motion to suppress the evidence had already been denied due to Defendant Norton's false testimony, and having been advised that the evidence that would be admitted if he went to trial, Mr. Thomas agreed to submit a guilty plea.

28. At a hearing before the Circuit Court of Richmond, Defendant Norton briefly gave testimony in support of Mr. Thomas's guilty plea.

29. At this hearing, Defendant Norton told the judge in detail how he obtained a search warrant to search Mr. Thomas's home, including the fact that the information was obtained from a reliable confidential informant.

30. The judge sentenced Mr. Thomas to seven years in prison, five and a half years of which would be suspended.

31. Mr. Thomas spent 15 months in jail and more than a year thereafter on supervised probation.

32. On February 12, 2016, Judge Joi Jeter-Taylor of the Circuit Court of Richmond vacated the criminal conviction of Mr. Thomas.

33. Judge Taylor vacated the conviction on the recommendation of Commonwealth's Attorney Michael Herring, who told Judge Taylor that Mr. Thomas had been convicted as a result of an extremely questionable search warrant obtained by Defendant Norton.

34. In fact, the search warrant that Defendant Norton used to search Mr. Thomas's home was not just questionable, it was fraudulent. In her Order vacating Mr. Thomas's conviction, Judge Taylor stated that the evidence "establishes by clear and convincing evidence that fraud did occur."

35. The convictions of at least nine people have been vacated due to fraudulent search warrants obtained and executed by Defendant Norton.

36. In order to obtain the fraudulent warrant that was used as a means to search Mr. Thomas's home, Defendant Norton swore under oath to the existence of a confidential informant that witnessed illegal activity in Mr. Thomas's home.

37. There was no confidential informant that told Defendant Norton about any illegal activity in Mr. Thomas's home. The existence of this informant was pure fabrication.

38. Upon information and belief, Defendant Norton copied information from an old affidavit, completely unrelated to Mr. Thomas, and pasted it into a new affidavit, merely changing the name of the suspect and the address to be searched. This was common behavior for Defendant Norton (he has been accused of using this method to obtain warrants in multiple other cases, *see Wilbur Ensley, et al. v. City of Richmond, et al.*, Case No. 3:17-CV-00024-MHL).

39. Defendant Norton had no probable cause to swear to an affidavit supporting a search warrant against Mr. Thomas.

40. Defendant Norton knew that his affidavit was materially misleading to the magistrate and that the search warrant would not have been issued without his materially misleading statements.

41. Despite Defendant Norton's knowledge that the search warrant was obtained through fraud, he executed the search warrant on Mr. Thomas's residence.

42. Defendant Norton was well aware of the constitutional protections afforded to private residences and he deliberately and fraudulently avoided those protections.

43. Defendant Norton was aware at the time he arrested Mr. Thomas that he was actively violating Mr. Thomas's constitutional rights.

44. Defendant Norton was aware after Mr. Thomas's arrest that Mr. Thomas would be set free if a judge, Mr. Thomas's defense attorney, or the prosecuting attorney became aware of the unlawful search.

45. Despite Defendant Norton's knowledge that Mr. Thomas was legally entitled to his freedom, Defendant Norton did not reveal the fraudulent actions used to obtain the warrant.

46. Due to the fact that Defendant Norton did not reveal his fraudulent actions in obtaining the warrant, and in fact lied under oath to a judge about the circumstances of obtaining the warrant, Mr. Thomas pled guilty to the charges against him and spent 15 months in jail.

## COUNT I
### *Franks* Claim in Violation of the Fourth Amendment (42 U.S.C. § 1983)

47. The foregoing paragraphs are herein incorporated and realleged.

48. If a person knowingly or with reckless disregard for the truth includes material false statements or omits material facts in an affidavit submitted in support of a warrant application, he or she may be liable under § 1983 for a Fourth Amendment violation. This is often referred to as a *Franks* claim, after the Supreme Court case *Franks v. Delaware*, 438 U.S. 154 (1978).

49. Virginia law similarly prohibits the filing of a search warrant without an affidavit that establishes probable cause and makes any officer who does so "guilty of a malfeasance." Va. Code §§ 19.2-54 and 19.2-55. Defendant knew that the affidavit he submitted to obtain the warrant to search Mr. Thomas's home did not establish probable cause because he knew that the confidential informant described in the affidavit had never provided Defendant Norton any information regarding Mr. Thomas or Mr. Thomas's home.

50. Defendant Norton knowingly included material false facts and omitted material facts in a sworn affidavit in support of a warrant application. In particular, the "fact" that a criminal informant had entered the home and observed illegal drugs is patently false and was the essential basis for the warrant.

51. No magistrate would have found probable cause to issue a search warrant against Mr. Thomas if Defendant Norton had not included materially false facts in his sworn affidavit, because there were no other factual allegations in the affidavit that would have given rise to issuance of a search warrant at Mr. Thomas's residence.

52. No magistrate would have found probable cause to issue a search warrant against Mr. Thomas if Defendant Norton had included the materially relevant fact that the statements of his confidential informant were in no way related to or referring to Mr. Thomas, but had been copied and pasted into numerous similar affidavits used to obtain warrants to search other residences. As mentioned above, Defendant Norton used this copy-and-paste method of obtaining warrants in numerous cases. *See Wilbur Ensley, et al. v. City of Richmond, et al.*, Case No. 3:17-CV-00024-MHL

53. Defendant Norton's materially false statements and materially relevant omissions were necessary to a finding of probable cause to search Mr. Thomas's apartment.

54. Defendant Norton had no right to arrest or seize Mr. Thomas, because the warrant affidavit was deficient due to its dishonesty, resulting in a search warrant that was obtained fraudulently and without probable cause, all of which Defendant Norton knew at the time of the arrest.

55. Where a law enforcement officer recklessly or intentionally misleads a magistrate, as Defendant Norton did, he is not entitled to qualified immunity.

56. By and through Defendant Norton's abuse of established criminal process, Defendant Norton directly violated Mr. Thomas's constitutional rights.

57. Because Mr. Thomas would have been required to "necessarily imply the invalidity of his conviction or sentence" by bringing this lawsuit before the charges against him were vacated, Mr. Thomas had "no cause of action under § 1983 unless and until the conviction or sentence [was] reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994). Thus, Mr. Thomas's cause of action did not arise until his sentence was invalidated on February 12, 2016.

## COUNT II
**Unlawful Search in Violation of the Fourth Amendment (42 U.S.C. § 1983)**

58. The foregoing paragraphs are herein incorporated and realleged.

59. The Fourth Amendment states that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

60. Every reasonable law enforcement officer knows that including materially misleading or deliberately false statements in an affidavit supporting a warrant violates the Fourth Amendment rights of the person against whom the warrant is sought.

61. Every reasonable law enforcement officer knows that a warrant that is issued due to reliance upon a materially misleading or deliberately false affidavit is not a valid warrant under the Fourth Amendment.

62. Defendant Norton knew that the search warrant he obtained to search Mr. Thomas's residence was not valid and that executing the search warrant would violate Mr. Thomas's rights.

63. Despite Defendant Norton's knowledge that the warrant was fraudulent and ineffective, he invaded Mr. Thomas's home without attempting to obtain consent and over Mr. Thomas's objections.

64. By executing the search warrant, Defendant Norton invaded Mr. Thomas's home without probable cause and knowingly violated Mr. Thomas's Fourth Amendment right to be free from searches unsupported by probable cause or a valid warrant.

65. Because Mr. Thomas would have been required to "necessarily imply the invalidity of his conviction or sentence" by bringing this lawsuit before the charges against him were vacated, Mr. Thomas had "no cause of action under § 1983 unless and until the conviction or sentence [was]

reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994). Thus, Mr. Thomas's cause of action did not arise until his sentence was invalidated on February 12, 2016.

## COUNT III
**Malicious Prosecution in Violation of the Fourth Amendment (42 U.S.C. § 1983)**

66. The foregoing paragraphs are herein incorporated and realleged.

67. The Fourth Circuit recognizes malicious prosecution as a constitutional tort cognizable under the Fourth Amendment.

68. In order to state a claim for malicious prosecution in the Fourth Circuit, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

69. The Defendant caused Mr. Thomas's seizure.

70. Mr. Thomas's seizure was only made possible pursuant to a search warrant that was unsupported by probable cause.

71. The ensuing prosecution of Mr. Thomas was set in motion by Defendant Norton's intentional misuse of criminal procedure and was continued and completed through Defendant Norton's cooperation.

72. At all times throughout Mr. Thomas's prosecution, Defendant Norton had objective knowledge that Mr. Thomas's constitutional rights were being violated.

73. Ultimately, all criminal proceedings were terminated in Plaintiff's favor.

## COUNT IV
**Denial of the Right to Make a Voluntary and Intelligent Plea in Violation of the Fourteenth Amendment (42 U.S.C. § 1983)**

74. The foregoing paragraphs are herein incorporated and realleged.

75. Every criminal defendant has a constitutional right to make a knowing, voluntary, and intelligent plea.

76. A guilty plea is not knowingly and voluntarily made when the defendant has been misinformed as to a crucial aspect of his case.

77. By intentionally misleading the magistrate in order to obtain the search warrant used against Mr. Thomas and then withholding materially relevant information related to the search warrant throughout Mr. Thomas's prosecution, Defendant Norton intentionally misinformed Mr. Thomas about a crucial aspect of his case.

78. Defendant Norton's affirmative misrepresentation induced Mr. Thomas to agree to a guilty plea.

79. Mr. Thomas certainly would have altered his decision to plead guilty if Defendant Norton had shared all materially relevant facts with Mr. Thomas or his legal counsel.

80. § 1983 grants a cause of action to any person "depriv[ed] of any rights, privileges, or immunities secured by the Constitution.

81. Because the Supreme Court has held that the right to make a voluntary and intelligent plea is secured by the Fourteenth Amendment, § 1983 sets forth a cause of action for Mr. Thomas against the state actor who deprived him of that right, Defendant Norton.

82. Because Mr. Thomas would have been required to "necessarily imply the invalidity of his conviction or sentence" by bringing this lawsuit before the charges against him were vacated, Mr. Thomas had "no cause of action under § 1983 unless and until the conviction or sentence [was] reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994). Thus, Mr. Thomas's cause of action did not arise until his sentence was invalidated on February 12, 2016.

## COUNT V
## Malicious Prosecution in Violation of Virginia Law

83. The foregoing paragraphs are herein incorporated and realleged.

84. To state a claim for malicious prosecution under Virginia law, a plaintiff must plead that a prosecution was "(1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Hudson v. Lanier*, 255 Va. 330, 333 (1998).

85. Defendant Norton's actions throughout the prosecution of Mr. Thomas, from intentionally misleading the magistrate to failing to reveal materially relevant information about the warrant throughout Mr. Thomas's prosecution, were malicious.

86. Defendant Norton's malice is evident from his intentional deceit of the magistrate and his obvious knowledge of the fact that he was violating Mr. Thomas's constitutional rights.

87. The prosecution was instituted by, and with the cooperation of, Defendant Norton through his seeking of a fraudulent search warrant and then arrest of Mr. Thomas after execution of a knowingly fraudulent warrant.

88. The institution of prosecution against the defendant was done without probable cause.

89. All criminal proceedings against Mr. Thomas in relation to Defendant Norton have been terminated in a manner not unfavorable to Mr. Thomas.

WHEREFORE, the Plaintiff respectfully prays for judgment against the Defendant in the sum of $1,000,000 and interest from the date of this accident, plus his costs and fees expended in connection with this action.

WHEREFORE, the Defendant's unlawful conduct was motivated by an evil motive or intent and a callous indifference to the federally protected rights of others, the Plaintiff respectfully prays for judgment against the Defendant in the sum of $350,000 in punitive damages.

WHEREFORE, Plaintiff seeks such further and additional relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

                                                            Respectfully filed,
                                                            **MARCO THOMAS**

                                                        _____/s/_____

Seth Carroll (VSB No. 74745)
Commonwealth Law Group, LLC
1506 Staples Mill Road
Suite 202
Richmond, VA 23230
Phone: (804) 387-6212
Facsimile: (866) 238-6415
scarroll@hurtinva.com

Connor Bleakley (VSB No. 92113)
Commonwealth Law Group, LLC
1506 Staples Mill Road
Suite 202
Richmond, VA 23230
Phone: (804) 387-6212
Facsimile: (866) 238-6415
cbleakley@hurtinva.com