**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| MARCO THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Civil Action No. 3:18CV30-HEH |
| JASON NORTON, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**BRIEF IN OPPOSITION OF DEFENDANT JASON NORTON'S**
**MOTION TO DISMISS THE COMPLAINT**

## I.  INTRODUCTION

On November 19, 2009, Defendant Jason Norton ("Norton"), acting in his capacity as a detective with the Richmond City Police Department, without invitation, walked into the unlocked front door of the residence of Plaintiff Marco Thomas ("Mr. Thomas") accompanied by state and federal law enforcement officers. When Mr. Thomas protested the intrusion, Norton handcuffed Mr. Thomas, ordered him to sit down at his kitchen table and showed him a search warrant signed by a local magistrate judge. Although Mr. Thomas protested, Norton told Mr. Thomas that he could not leave and that there was no way that he could prevent the search of his home because Norton had obtained a valid search warrant. In reality, Norton knew the search warrant was not valid, because he had obtained it by submitting an affidavit that contained information he knew was not applicable to Mr. Thomas.

Norton then told Thomas he was going to bring in dogs and tear the house apart searching for drugs. Subsequently, police officers have discovered marijuana and a handgun in Mr. Thomas' bedroom. The Commonwealth subsequently charged Mr. Thomas with possession of marijuana and possession of a firearm while in possession of a controlled substance. After Mr. Thomas'

1

motion to suppress the evidence was denied, Mr. Thomas pled guilty to the charges and spent 15 months in jail, two years on supervised probation, and additional time on unsupervised probation.

In April of 2015, a federal judge vacated the convictions of three men on the grounds that they had shown that Norton had used false information in his sworn affidavits in support of his requests for search warrants. The revelation resulted in investigations by both the Department of Justice and the Commonwealth. As a result, the Commonwealth became aware that Norton had been using a "cut-and-paste" method of obtaining search warrants, wherein he would copy the statements of a confidential informant legitimately used for one search warrant, and then paste those statements into warrant applications for suspects wholly unrelated to the original statements. After Norton's illegal and unconstitutional conduct was discovered, Judge Joi Jeter Taylor of the Richmond Circuit Court vacated Mr. Thomas' criminal conviction on February 12, 2016, finding "clear and convincing evidence that extrinsic fraud did occur and that such fraud renders the aforesaid convictions void." At least eight Commonwealth convictions and three federal convictions have been vacated as a result of Norton's fraudulent behavior.

His conviction now vacated, Mr. Thomas seeks redress for the unconstitutional acts resulting in the search of his home, his arrest, prosecution and imprisonment. In his Complaint, Mr. Thomas alleges that Norton violated his Fourth Amendment rights by swearing to false information in a search warrant, knowingly executing a search without probable cause, and supporting Mr. Thomas' prosecution when he knew that the only evidence supporting Mr. Thomas' guilt would be inadmissible. Mr. Thomas also alleges that Norton violated Mr. Thomas' right to make a knowing and intelligent plea by failing to reveal the true manner in which he obtained his search warrant. Lastly, Mr. Thomas alleges Norton's actions also constitute malicious prosecution under Commonwealth of Virginia law.

In spite of the fact that courts addressing the circumstances of 11 separate criminal defendants have held that Norton's behavior, by clear and convincing evidence, violated those defendants' constitutional rights, Defendant Norton alleges that Mr. Thomas has no remedy at law and that his Complaint fails to state a claim for relief. Each of Norton's legal defenses to the allegations set forth in Mr. Thomas' Complaint are legally inadequate to support Norton's Motion to Dismiss. These defenses are addressed in the order in which the defenses were presented in Norton's Motion to Dismiss.

## II.   LAW AND ARGUMENT

### A.   The Standard of Review.

Under Rule 12(b)(6), "dismissal is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to state a claim to relief that is plausible on its face." *Brockington v. Boykins*, 637 F.3d 503, 505-06 (2011) (*citing Bell Atl. Corp. v. Towmbly,* 550 U.S. 570 (2007). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, [it does not invite] an analysis of potential defenses to the claims set forth therein." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Thus, this Court must only consider whether Mr. Thomas' allegations, taken as fact and construed in the light most favorable to him, would entitle him to some form of relief against Defendant Norton.

### B.   Each of Mr. Thomas' Section 1983 Claims Properly State a Legal Claim.

#### 1.   Mr. Thomas' Fourth Amendment Claims Survive as a Matter of Law.

Norton alleges that Mr. Thomas' claims fail for five reasons: "(1) there was probable cause for Thomas' arrest; (2) the fruit of poisonous tree doctrine does not apply to Section 1983 claims; (3) The reinstatement of the marijuana possession charge, addition of the unlawful firearm possession charge, and guilty plea are intervening and superseding causes that insulate Norton

3

from liability; (4) Thomas was guilty of the crimes charged; and (5) Thomas' claims for unlawful seizure and search are time-barred." Norton Brief at 5. Each of these assertions are based on misinterpretations of the facts presented or misinterpretation of the law.

          a.    *There was not Probable Cause for the Search of Mr. Thomas' Home.*

In his Brief, Defendant Norton makes the blanket argument that "probable cause defeats Thomas' Fourth Amendment Claims," but Norton conflates the various issues raised by Plaintiff and fails to deliver compelling support for this blanket argument Norton Brief at 5. Generally, Norton attempts to evade liability by improperly asking the Court to view the circumstances in his favor, and to negate liability for his constitutional violations based on the subsequent discovery of contraband in the home. Yet the discovery of this contraband would never have occurred absent Norton's unlawful search (based on a fraudulent affidavit) and unlawful seizure of Thomas (placing him in handcuffs and bringing drug dogs into the home over his protest), actions which he took without any information that would allow a reasonable or prudent person to believe there was probable cause to support such a warrant[1]. *See e.g., Smith v. Munday,* 848 F.3d 248, 253 (4th Cir. 2017) (holding that probable cause must exist when applying for an arrest warrant).

Mr. Thomas clearly alleges that Norton "had no probable cause to swear to an affidavit supporting a search warrant against Mr. Thomas" and that "Despite Defendant Norton's knowledge that the search warrant was obtained through fraud, he executed the search warrant on Mr. Thomas' residence." Complaint ¶ 40, 42. Accordingly, Mr. Thomas has properly alleged that there was no probable cause to obtain the search warrant, thus supporting his Fourth Amendment *Franks* claim. *See Unus v. Kane*, 565 F.3d 103, 124 (4th Cir. 2009) (*citing Franks v. Delaware*,

---

[1] In fact, when he conducted the search, Norton almost certainly knew that the search was not lawful, yet conducted the search anyway in hopes of sniffing out "probable cause" to justify an arrest. It is hard to imagine that this was not Norton's strategy, *i.e.* that the end would justify the means.

438 U.S. 154, 155-56 (1978)) ("[A]n officer contravenes the Fourth Amendment when he procures a search warrant through the use of false statements, whereby a magistrate would not have otherwise found probable cause."). Similarly, because Mr. Thomas alleges that Norton knew that the search warrant was constitutionally invalid, Mr. Thomas has clearly stated that there was not probable cause for the entry into his home, alleging a direct violation to the text of the Fourth Amendment itself: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV.

### b. There was not Probable Cause to Arrest Mr. Thomas.

In his Brief, Norton correctly states the legal standard for alleging constitutional malicious prosecution in the Fourth Circuit, stating that the plaintiff must allege that: "[1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). It is uncontested that criminal proceedings against Mr. Thomas terminated in his favor when the Richmond Circuit Court vacated his criminal conviction on February 12, 2016. Thus, the only question is whether "the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause." *Id.*

Although Norton alleged in his brief that all of Mr. Thomas' Fourth Amendment claims fail due to the existence of probable cause, his argument focuses entirely on the existence of probable cause to arrest, rather than probable cause to search Mr. Thomas' home. The existence of probable cause to arrest is a separate legal issue that merits further discussion. Essentially, Norton argues that, in spite of the fact that Norton knowingly entered and searched the home illegally and knew that none of the evidence found inside could legally be admitted against Mr. Thomas in a subsequent prosecution, that an action for malicious prosecution cannot be maintained

simply because Norton found contraband during his knowingly illegal search. Mr. Thomas disagrees with this legal conclusion.

The deeper question of this case is what "legal process" must be unsupported by probable cause in order to make an arrest unconstitutional. Although Mr. Thomas does not contest that Norton found contraband in his home, Mr. Thomas asserts that Norton knew, from the moment he applied for the search warrant, that any evidence discovered in Mr. Thomas' home would not be admissible against Mr. Thomas in a potential prosecution. It is true that probable cause "requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). But, probable cause should not exist where the arresting officer reasonably should know that the only evidence available to convict cannot be used due to the underlying fraud in procuring the search warrant.. See United States v. Joy, 336 F.App'x 337 (4th Cir. 2009) (holding that, in the context of examining whether probable cause existed to make an arrest, it is appropriate to examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act.)

Although Norton says Plaintiff's allegations finding marijuana and a gun gives rise to probable cause to believe that Mr. Thomas had committed a crime, it ignores that Norton simultaneously knew that he only found the contraband as a result of his unlawful invasion of Mr. Thomas' home. Consequently, at the time of the arrest,[2] Norton reasonably should have known that Mr. Thomas could not be legally prosecuted for possession of the discovered contraband. Further, even after the arrest, Norton repeatedly failed to produce "exculpatory evidence," *i.e.* the truth about how he unlawfully obtained the search warrant, in order to continue the prosecution against Mr. Thomas and obtain a conviction. In fact, the Richmond Court recognized on February

---

[2] In fact, Norton actually unlawfully seized and handcuffed Mr. Thomas *before* he found marijuana and drugs in the home.

6

12, 2016, that there was "clear and convincing evidence that extrinsic *fraud* did occur and that such *fraud* renders the aforesaid convictions void." See Compl. at ¶34. The voiding of Mr. Thomas' conviction was the direct result of Norton's deliberate misuse of various legal processes: the search warrant application, the search, and his repeated failure to disclose the truth about the circumstances underlying the search warrant affidavit. At each step in Mr. Thomas' prosecution, Defendant Norton knew that Mr. Thomas was entitled to his freedom, and yet he did nothing to secure Mr. Thomas' release. In fact, he actively sought to keep Mr. Thomas incarcerated in spite of his knowledge that Mr. Thomas was entitled to release. Given these substantial abuses that Norton committed against Mr. Thomas, it seems that the "legal process" by which Mr. Thomas was seized and held, was entirely unsupported by probable cause. In fact, at any moment Defendant Norton could have told the truth and facilitated Mr. Thomas' release, but he never did so.

      b. *The Fruit of the Poisonous Tree Theory should Apply to Norton in this Civil Suit.*

In an accompanying case involving the same facts, but different plaintiffs, *Ensley et al. v. City of Richmond, et al.* (Case No. 3:17-CV-00024-MHL), the plaintiffs addressed this argument in great detail and adequately addressed every argument that Mr. Thomas would have made. In order to avoid duplicating arguments that this Court has already heard from the other plaintiffs, Mr. Thomas hereby incorporates Section I.B of ECF Document 51 in *Ensley et al.*.

      c. *The Dismissal and Reinstatement of Mr. Thomas' Charges do not Insulate Norton from Liability, nor does Mr. Thomas' Guilty Plea.*

Norton also argues that because Mr. Thomas' marijuana charge was briefly dropped and then reinstated along with the firearm charge, the chain of causation was sufficiently broken, thus insulating Norton from liability. It is true that law enforcement officers are protected from liability

7

for malicious prosecution and other torts of unlawful imprisonment when a prosecutor independently decides to pursue criminal charges. However, there is a well-established exception to this general rule:

> *Of course, constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation. Accordingly, subsequent acts of independent decision-makers (e.g. prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure. Such intervening acts of other participants in the criminal justice system insulate a police officer from liability. However, even when, as here, a prosecutor retains all discretion to seek an indictment, police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances. In particular, officers **may be liable when they have lied to or misled the prosecutor.***

*Evans v. Chambers*, 703 F.3d 636, 647 (4th Cir. 2012) (internal citations and quotations omitted) (emphasis added)

Although Norton quotes a portion of the excerpt above in his brief, he makes no attempt to address the allegation that Norton misled the prosecution. In his Complaint, Mr. Thomas alleges that Norton lied under oath, in order to support the charges against Mr. Thomas. Compl. ¶ 23, 46. Further, because Mr. Thomas alleges that, throughout the entire process of prosecution, Norton knew the evidence supporting the prosecution could not legally be admitted against Mr. Thomas, the Complaint asserts that Norton intentionally misled Commonwealth prosecutors. But for Norton's decision to intentionally mislead prosecutors about the circumstances under which he obtained the warrant to search Mr. Thomas' home, no reasonable prosecutor would have pursued criminal charges against Mr. Thomas, either initially *or* by reinstatement. *See Bourunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988) (holding that a the presumption that a prosecutor is exercising independent judgment in determining probable cause can be rebutted by evidence that police officers knowingly provided false information to the prosecutor). Because Norton's

8

deception of prosecutors was essential to the prosecution, both initially and in reinstatement, Norton's unconstitutional conduct taints the entire prosecutorial process and the intervention of judges and prosecutors in the process does not insulate Norton from liability in any way.

Similarly, Mr. Thomas' guilty plea does not insulate Norton from liability for his unconstitutional conduct. Mr. Thomas alleges that he only pled guilty because the deck was stacked against him due to Norton fueling his prosecution by falsely portraying the circumstances of obtaining the warrant. Compl. ¶ 79. Because Mr. Thomas was deprived of his constitutional right to make a knowing and intelligent plea, his guilty plea cannot be viewed as an intervening cause that insulates Norton from liability. *See Townes v. City of New York*, 176 F.3d 138, 147 (2nd Cir. 1999) (holding that the chain of causation may not be broken where there is evidence that the police officer misled the prosecution). This issue is more thoroughly addressed in Section III.B.2 of this brief.

          d.      *Mr. Thomas' Fourth Amendment Claims Do Not Fail Due to His Alleged Guilt.*

Again, although Norton's argument only addresses Mr. Thomas' malicious prosecution claim, Norton generally asserts that "Thomas' Fourth Amendment Claims Must Fail Because He is Guilty." Brief at 13. Presumably, based on the argument Norton presents, Norton only asserts that Mr. Thomas' Fourth Amendment malicious prosecution claim must fail, as Mr. Thomas' underlying guilt is irrelevant to whether the warrant application or the search itself was constitutional. *See e.g. Quinn v. Cain*, 714 F. Supp. 938, 941 (N.D. Ill. 1989) ("Just because a person committed a crime does not mean that the police had probable cause to believe that he did so"); *Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997) (finding that the plaintiff, after the defendant officer found contraband in his home, could maintain a *Franks* claim). Thus, Mr.

Thomas' *Franks* claim and unlawful search claim are unaffected by Mr. Thomas' alleged underlying guilt.

The matter of whether Mr. Thomas' underlying guilt bars his Fourth Amendment malicious prosecution claim is a separate legal issue. Defendant Norton cites one case in support of his claim that actual innocence is a prerequisite to bringing a § 1983 malicious prosecution claim, *Donahue v. Gavin*, 280 F.3d 371, 382-84 (3d Cir. 2002). While there appear to be few cases that address this argument, the United States District Court for the District of New Mexico has addressed this issue in significant detail. *See Wilkins v. DeReyes*, Civ. No. 02-980 JH/RLP. (D.N.M. Oct. 14, 2010). After the Court in *Wilkins* noted that "[n]either Plaintiffs nor Defendants have cited a federal court case that directly address the issue of whether actual guilt is an affirmative defense to a § 1983 claim of malicious prosecution," the Court wrote the following analysis:

> *[I]t appears to the Court that there are several reasons not to permit the inclusion of actual guilt as a defense to liability for a § 1983 malicious prosecution claim. First, the purpose of § 1983 is to deter public officials from violating constitutional rights. See Monell v. Dept. of Social Servs., 436 U.S. 658, 685 (1978) (stating that § 1983 should be construed "to give a broad remedy for violations of federally protected civil rights.").* ***To allow actual guilt as a complete defense to liability for a constitutional malicious prosecution claim is tantamount to asserting that constitutional violations can be washed clean if the accused is in fact guilty of the crime of which he is accused****. Permitting a public official to escape liability for violating those rights — here, in the form of allegedly coercing statements from witnesses and maliciously abusing legal process — merely because it turns out, in the end, that the target of the investigation was guilty, would undermine that public policy of deterring unconstitutional conduct. This sort of "ends justifies the means" reasoning is inconsistent with § 1983 constitutional jurisprudence generally, which suggests that coercive and unconstitutional police tactics cannot be excused merely because they lead to truthful confessions, or to the convictions of individuals who have indeed committed the crimes of which they are accused. . . .* ***All accused persons, whether guilty or not, are entitled to the same constitutional protections.*** *Thus, regardless of whether he has committed the crime of which he is accused, an individual's constitutional rights have been infringed upon if law enforcement officers use coercive tactics to obtain evidence to support arrest warrants.*

*Id.* Mr. Thomas suggests that this Court should adopt the reasoning in *Wilkins*.

Even if evidence of Mr. Thomas' underlying guilt is introduced against him at trial, that evidence should not constitute an absolute bar to his recovery. As the *Wilkins* Court stated, such a ruling would chill the public policy of deterring unconstitutional conduct by insulating law enforcement entities and officers from liability for knowing and willful constitutional violations simply because the person whose rights the officer violated committed ultimately committed a crime. Thus, officials would be free to violate certain constitutional rights with impunity, such as committing unconstitutional searches, so long as they found evidence of any crime following their unlawful intrusion. At all times, Defendant Norton had complete knowledge that he had no right to search Mr. Thomas' home and that Mr. Thomas was entitled to his freedom, yet he continued to take affirmative steps to deny Mr. Thomas' freedom and to obscure his own unlawful conduct. To accomplish the purpose of Section 1983 and to deter public officials from violating constitutional rights, litigants must have independent civil recourse for the constitutional violations present in this case.

        e.      *Mr. Thomas' Claims Are Not Time-Barred.*

"In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [invalidated]." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Because a plaintiff must prove that his sentence has been invalidated, the Supreme Court held in *Heck* that a plaintiff challenging the legality of his sentence "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. The *Heck* bar, therefore, means that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

11

While limitations imposed by the *Heck* bar appeared clear in the years that followed the ruling, the Supreme Court offered a new interpretation of *Heck* with its decision in *Wallace v. Kato*, 549 U.S. 384 (2007), on which Defendant Norton strongly relies. In *Wallace*, the Supreme Court held that an action for false arrest accrues "immediately upon his false arrest" and tolls only until the date when the false imprisonment ends, *i.e.* when the falsely arrested defendant is arraigned before a magistrate. *Id.* at 389-92 n.3. The decision in *Wallace*, however, should be narrowly applied to the claim of false arrest, not all Fourth Amendment claims. In *Owens v. Balt. City State's Atty. Office*, 767 F.3d 379 (4th Cir. 2014), the Fourth Circuit wrote an in-depth analysis of the *Wallace* decision, finding that in construing the statute of limitations for § 1983 cases "a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run." *Id.* at 389 (citing *Wallace*, 549 U.S. at 388). In considering an alleged *Brady* violation, the Fourth Circuit held in *Owens* that "the [defendants] violated due process by maintaining proceedings against him without disclosing exculpatory evidence, malicious prosecution provides the closest analogy to his § 1983 claims." *Id.* at 390. The *Owens* Court described malicious prosecution as a claim that "redresses injuries a plaintiff sustains as a result of a defendant's improper initiation or maintenance of formal proceedings against him." *Id.* at 390 (*citing Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000)).

The crux of Mr. Thomas' claims is that Defendant Norton improperly, and intentionally, initiated proceedings against Mr. Thomas that he knew could not survive constitutional scrutiny. Because Norton acted intentionally and with full knowledge of the unconstitutionality of the warrant, the search and the prosecution, Mr. Thomas asserts that all of his claims are most

analogous to malicious prosecution and thus accrued on the date that his conviction was overturned.

With regard to Mr. Thomas' claim that Norton violated his right to make a knowing and intelligent plea, Norton describes the claim himself as an "iteration of his malicious prosecution claim." Norton Brief at 16. Consequently, Norton essentially admits that Thomas' claims for malicious prosecution and violation of his Fourteenth Amendment right to make a knowing and intelligent plea did not accrue until February 12, 2016, when Mr. Thomas' criminal conviction was vacated. With regard to Mr. Thomas' *Franks* claim and his unlawful search claim, Mr. Thomas asserts that because he followed the established procedure for invalidating such evidence by filing a motion to suppress the evidence, and that the motion to suppress was only defeated by intentional fraud, the *Franks* and search claims have become intertwined with his Fourteenth Amendment fair trial claim and his malicious prosecution claim. Furthermore, the ruling in *Wallace* has not been expanded to apply to all Fourth Amendment claims. *See e.g. Owens v. Balt. City State's Atty. Office*, *supra*. Regardless of whether Norton's intentional deceit in the warrant process and search can be enveloped in Mr. Thomas' malicious prosecution claims, it is clear that any challenge to the validity of the search or the search warrant would have necessarily invalidated Mr. Thomas' conviction and been subject to the *Heck* bar, meaning Mr. Thomas' statute of limitations should have tolled until his conviction was invalidated.

Mr. Thomas is not aware of any case law that directly addresses what remedy exists where intentional deceit by a law enforcement officer causes a judge to admit evidence against a defendant that otherwise would have been suppressed. Mr. Thomas asserts that, where a plaintiff properly moves to suppress evidence and where that motion is defeated through intentional deceit,

13

failure to toll the statute of limitations would result in a miscarriage of justice and a windfall victory for Norton and others like him.

        2.      <u>Mr. Thomas' Claim for a Violation of his Right to Make a Knowing and Intelligent Plea is Valid and Actionable.</u>

Norton incorrectly argues that *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), a criminal case with similar facts to Mr. Thomas' case, cannot be applied to establish a civil remedy. Norton argues, "*Fisher* is inapplicable here, however, because it is an extension of the fruit of the poisonous tree doctrine in the criminal context. This doctrine does not apply in § 1983 cases." Norton Brief at 18. However, Norton does not explain why Mr. Thomas should not be precluded from monetary damages under § 1983, based on the Fourth Circuit finding that an "officer's affirmative misrepresentation, which informed the defendant's decision to plead guilty and tinged the entire proceeding, rendered the defendant's plea involuntary and violated his due process rights." *Fisher,* 711 F.3d at 473. Indeed, because § 1983 allows a plaintiff to seek money damages for deprivation of "any rights, privileges, or immunities secured by the Constitution," there is no logical reason why Mr. Thomas should not be able to pursue a § 1983 claim for violation of his Fourteenth Amendment right to make a knowing and intelligent plea. 42 U.S.C. § 1983.

Furthermore, although Mr. Thomas is asserting a somewhat novel claim, the foundation for the claim is based upon other Fourteenth Amendment case law. In the voluminous § 1983 litigation surrounding *Brady* violations, the courts have held that a plaintiff is entitled to damages when a state actor defendant denies the plaintiff the right to a fair trial. *See e.g. Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) ("The jury was instructed to find for Dominguez if it found that the defendant caused Dominguez's criminal trial to be unfair."); *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 406 n.1 (4th Cir. 2014) ("A *Brady* claim under § 1983 seeks relief, *regardless of the plaintiff's guilt or innocence,* for the deprivation of a fair trial") (emphasis

14

added). Where an officer withholds evidence that would otherwise make a criminal defendant change his plea, the *Brady* courts have established that the criminal defendant's rights were violated and he may remedy those rights with a § 1983 action.

In adjudicating Mr. Thomas' claim, the Court should draw from the elements of *Brady* to establish a standard for proving a Fourteenth Amendment due process violation through the denial of the right to make a voluntary and knowing plea. In a § 1983 action premised upon a *Brady* violation, a plaintiff must prove that "(1) the officer intentionally, and in bad faith, withheld exculpatory evidence from the prosecution; and (2) the suppression led to a wrongful conviction that was subsequently overturned based upon the alleged *Brady* violation." *Hash v. Close*, 968 F. Supp. 2d 825, 839 (W.D. Va. 2013). Further, the plaintiff asserting a *Brady* violation against police officers "must prove violations of his due process rights through malicious, intentional acts established by evidence strong enough to 'negate any negligent or innocent explanation for the actions on the part of the police.'" *Id.* at 831 (citing *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000)). However, as stated above, a *Brady* claim is not premised upon "the plaintiff's guilt or innocence [but upon] the deprivation of a fair trial." *Owens*, 767 F.3d at 406 n.1.

Extrapolating from the *Brady* cases, Mr. Thomas asserts that the withholding of any information that fundamentally precludes a criminal defendant from making a knowing and intelligent plea represents an actionable violation of due process under the Fourteenth Amendment through § 1983. Plaintiff proposes that, where an officer (1) deliberately, and in bad faith, withholds materially relevant information necessary for a criminal defendant to make a knowing and intelligent plea; (2) the lack of said information unquestionably would have altered the criminal defendant's plea; and (3) the § 1983 plaintiff shows evidence strong enough to negate any negligent or innocent explanation for the officer's actions, the plaintiff will have established that

he was deprived of his Fourteenth Amendment right to make a knowing and intelligent plea and that he has a right to money damages for the officer's unconstitutional conduct against him. See Hash v. Close 968 F.Supp.2d 825, 831 (W.D. Va. 2013) ("[A] plaintiff in an action against police officers must prove violations of his due process rights through malicious, intentional acts established by evidence strong enough to 'negate any negligent or innocent explanation for the actions on the part of the police.'") In this case, Defendant Norton rendered Mr. Thomas' plea involuntary and unknowing by deliberately choosing not to share evidence that any reasonable officer would know would have altered Mr. Thomas' decision to plead guilty. For this blatant and unjustifiable violation of Mr. Thomas' Fourteenth Amendment rights, Mr. Thomas must be entitled to a remedy under § 1983.

### C. Mr. Thomas' State Law Malicious Prosecution Claim Also Survives

As stated in Norton's brief, to sustain a cause of action for malicious prosecution, the plaintiff must prove that the prosecution was: (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and, (4) terminated in a manner not unfavorable to the plaintiff. *O'Connor v. Tice*, 281 Va. 1, 7, 704 S.E.2d 572, 575 (2011). Mr. Thomas has clearly alleged that the prosecution was malicious (that he knowingly executed a search warrant without probable cause), that it was instituted by the defendant (through procuring the search warrant), that the original search was without probable cause, and that the proceedings eventually terminated in Mr. Thomas' favor. Norton does not appear to dispute that Mr. Thomas made the proper allegations, but rather asserts that the claim fails because Mr. Thomas was guilty. As explained in Section II.B.1.b, Mr. Thomas asserts that evidence of his guilt should not be admitted as trial. The assertion that Mr. Thomas is guilty of the underlying crime is an affirmative defense that requires finding of fact. Thus, Norton's assertion that Mr. Thomas' guilt bars this claim would better be addressed by a motion for summary judgment, not a motion to dismiss.

### D.  The *Townes* Rational is not Binding Case Law and Does Not Support Dismissal of All of Mr. Thomas' Claims

Defendant Norton relies on *Townes v. City of New York*, 176 F.3d 138 (1999) for the proposition that, assuming the fruit of the poisonous tree doctrine does not apply to civil suits (as that court held), that a plaintiff arrested in violation of the Fourth Amendment cannot sue for damages if he was actually guilty. The Court in *Townes* ruled that damages for "his arrest, conviction, and incarceration . . . are not fairly traceable to the actual violations of his civil rights." *Id.* at 141. Given that the *Townes* Court denied compensation to the plaintiff on the basis of the causal connection between incarceration and the unlawful search, it is clear why Mr. Thomas' case is distinguishable. Unlike the officer-defendants in *Townes*, Defendant Norton intentionally falsified a warrant in order to manufacture probable cause and then deliberately concealed the manner in which he obtained the warrant in order to ensure that Mr. Thomas would be incarcerated. There was no indication in *Townes*, or in any other case law cited by Norton, that an incarcerated plaintiff should be denied the right to a remedy where a law enforcement officer intentionally violates the plaintiff's rights with the specific goal of causing an unconstitutional incarceration.

Furthermore, it should be noted that Mr. Thomas' damages do not only arise from the time he spent incarcerated, but also from the invasion of privacy into his home, and the emotional harm caused by Norton's outrageously improper use of the criminal process to target Mr. Thomas without probable cause inside of his home. Comparison of Mr. Thomas' claims to the *Townes* decision does not appreciate the substantial difference between the rights violated in Mr. Thomas' case and the rights violated in *Townes*. The Second Circuit in *Townes* found that the defendant officers' violation of the plaintiff's right to privacy as a passenger in a public taxicab would "at most support slight or nominal damages," *Id.* at 145. However, the *Townes* decision was based upon the right to be free from unreasonable search in an automobile, an area where the Supreme

Court has found that the Fourth Amendment supplies substantially less protection. S*ee Delaware v. Prouse*, 440 U.S. 648 (1979). Further, the plaintiff in *Townes* was a passenger in a vehicle open to the public, even further decreasing his reasonable expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128 (1978).

Defendant Norton, on the other hand, is accused of intentionally invading the home, a direct violation of the text of the Fourth Amendment and a violation of one the oldest and most heavily protected liberties in American history. *See Payton v. New York*, 445 U.S. 573, 597 n.45 (1980) (where the Supreme Court emphasized that the right to be secure in one's home is among the oldest and most "jealously insisted upon" liberties of the American people, noting that "A man's house is his castle" and that the Court "has long recognized the relevance of the common law's special regard for the home to the development of Fourth Amendment jurisprudence."); *Silverman v. United States*, 365 U.S. 505, 511 (1961) ("at the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). For this intentional, oppressive, and completely unjustified violation of Mr. Thomas' right to remain secure in his own home, Defendant Norton should not be rewarded with a strategic victory because he was fortunate enough to discover evidence of Mr. Thomas' alleged criminal behavior in the midst of his egregious violation of violating Mr. Thomas' constitutional rights. Such a result would not be within the spirit of Fourth Amendment or consistent with the remedial nature of § 1983.

## **CONCLUSION**

For the foregoing reasons, Mr. Thomas respectfully requests that this court deny the Defendant's Motion to Dismiss in its entirety.

Respectfully filed,
**MARCO THOMAS**

_____/s/_____
Seth Carroll (VSB No. 74745)
Connor Bleakley (VSB No. 92113)
Commonwealth Law Group, LLC
1506 Staples Mill Road
Suite 202
Richmond, VA 23230
Phone: (804) 387-6212
Facsimile: (866) 238-6415
scarroll@hurtinva.com
cbleakley@hurtinva.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 2, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a NEF to the following:

      David P. Corrigan (VSB No. 26341)
      Leslie A. Winneberger (VSB No. 45040)
      Harman, Claytor, Corrigan & Wellman
      P.O. Box 70280
      Richmond, Virginia 23255
      dcorrigan@hccw.com
      lwinneberger@hccw.com
      (804) 747-5200
      (804) 747-6085 (fax)

_____/s/_____
Seth Carroll (VSB No. 74745)
Connor Bleakley (VSB No. 92113)
Commonwealth Law Group, LLC
1506 Staples Mill Road
Suite 202
Richmond, VA 23230
Phone: (804) 387-6212
Facsimile: (866) 238-6415
scarroll@hurtinva.com
cbleakley@hurtinva.com